IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| KEYSTONE TRANSPORTATION SOLUTIONS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 5:18-cv-00039 |
| NORTHWEST HARDWOODS, INC., *et al.*, | ) ) | By: Elizabeth K. Dillon United States District Judge |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Pending before the court is the motion of defendants, Northwest Hardwoods, Inc. (NWH) and Thomas Mereen, to exclude plaintiff's proffered expert, David Steffens. Defendants argue that Steffens should not be permitted to offer expert testimony for several reasons. First, they contend that, because he has a direct financial interest in the outcome of this litigation, Steffens is not a "reliable" witness and allowing his expert testimony would violate public policy. Thus, he is subject to exclusion on that basis alone. Second, they assert that he has no expertise or specialized technical knowledge in the subjects on which he intends to offer opinions and thus that he is not qualified under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Third, they claim that his opinions themselves are unreliable "because they rest on nothing more than informed speculation, legal conclusions, narrative, or his own *ipse dixit*." (Defs.' Mem. Supp. Mot. Exclude 18, Dkt. No. 84.)

For the reasons set forth in this opinion, the court will grant the motion to exclude Steffens as an expert witness. Steffens will be permitted to testify as to a fact witness, however, and much of what Steffens offered as expert testimony may be appropriate subject matters for his testimony as a fact witness.

## I. BACKGROUND[1]

David Steffens, along with Williams Ellis, founded Keystone, and Steffens served as its CEO. Prior to forming the company, the two men researched transportation inefficiencies in the forest products market. In response to what they learned, Steffens developed the "Shipper Savings Model" (SSM). According to Steffens, SSM's "high level conclusions" were not unique, but its specific findings on savings were confidential, and Keystone took significant steps to secure and keep confidential the information, modeling, and data underlying SSM.

After failing in its attempts to sell Keystone to either NWH or another buyer, Keystone eventually ceased operations. In this lawsuit, Keystone alleges that NWH and Mereen, who was previously Keystone's president and now works for NWH, interfered with its business interests and improperly gained access to the confidential trade secrets underlying the SSM model.

Defendants' claim of Steffens's bias stems primarily from the fact that, although Keystone is now a non-operating entity, its interests in this litigation have been sold to another business entity, Clarendon. Under the terms of the original operating agreement with Clarendon, as Steffens explained it, that entity will receive ten percent of any recovery by Keystone in the lawsuit; Steffens and Ellis will equally split the rest. (Steffens Jan. Dep. 69–70, Dkt. No. 84-2.) If there is a recovery by Keystone in this case, then, Steffens believes he will personally recover 45 percent of those proceeds. (*Id.* at 70.)

As Steffens candidly admits, he is "obviously" "an interested party" (Steffens Dec. Dep. 43, Dkt. No. 84-4), and he has "a direct financial interest in this case" (Steffens Jan. Dep. 69). Moreover, he is not otherwise being compensated as an expert witness for the time he spent on the report, although he will be given something for incidental expenses. (*Id.* at 69.)

---

[1] The factual background underlying the entire case is covered in more detail in other opinions, such as the court's opinion on summary judgment, and the court will not repeat it here. For purposes of this motion, the court focuses on Steffens, his purported qualifications and interest in the case, and his opinions.

According to his expert report, Steffens is qualified to offer his opinions because he has "in excess of thirty years of a broad background in identifying, modeling[,] and executing business opportunities that optimize or solve market inefficiencies in supply chain and logistics." (Steffens Rep. 1–2, Dkt. No. 84-3.) There are six specific opinions he intends to offer:

1. The work, information, analysis and conclusions resulting in the development of the Business Model are considered valuable and confidential in the transportation logistics industry;
2. The use of Non-Disclosure Agreements in these industries to safeguard information from a competitor's unauthorized use and disclosure;
3. KTS undertook commercially reasonable efforts to maintain the confidentiality of its Trade Secrets;
4. The information regarding the business model, practices, and methods of KTS are proprietary and not readily discernible from public information;
5. Northwest Hardwoods committed to opening a business unit at the Inland Port within ten (10) weeks of receiving access to the confidential information of KTS which supported the Business Model. There is no reasonable way that Northwest Hardwoods would have, or could have, committed to opening a new business unit in November 2016 without receiving and evaluating that information, as it had been operating forestry mills in the Appalachian area prior to the creation of the VIP in 1989—thus having knowledge of the resources available at the VIP for 27 years yet having insufficient knowledge of how to apply the resources to an effective cost savings transportation model; and
6. The current business operated by Northwest Hardwoods at the Inland Port is the same in all material aspects to the Business Proposal as well as the business that KTS operated.

(*Id.* at 3–6.)

## II. DISCUSSION

### A. Legal Standards

Before considering whether a proffered expert's testimony is reliable, the court first determines whether the witness qualifies as an expert. A witness may qualify as an expert on the basis of "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The expertise

3

must relate to the areas in which the expert is expressing opinions. *See Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 800 (4th Cir. 1989). Exclusion should only occur where all bases for expertise are lacking with regard to the issue for which the opinion is offered, and a proffered expert "need not be precisely informed about all details of the issues raised in order to offer an opinion." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (quoting *Thomas J. Kline, Inc.*, 878 F.2d at 799).

While the test for exclusion may be a "strict one," *Kopf*, 993 F.2d at 377, some type of relevant expertise is nonetheless required. For example, where experience is one of the bases for a witness's expertise, the witness must "explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *Radiance Found., Inc. v. Nat'l Ass'n for the Advancement of Colored People*, 27 F. Supp. 3d 671, 674 (E.D. Va. 2013) (citations omitted). Additionally, a witness's expertise must be tailored, to some degree, to the specific opinions offered and the particular facts in the case; general expertise or knowledge on a broad topic or general field may be insufficient, depending on the facts of a case. *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391–92 (D. Md. 2001) ("The fact that a proposed witness is an expert in one area, does not *ipso facto* qualify him to testify as an expert in all related areas.") (citing *Oglesby v. General Motors Corp.*, 190 F.3d 244, 247 (4th Cir. 1999)).

After ensuring that an individual qualifies as an expert, this court has an obligation under *Daubert* to act as a gatekeeper and ensure that any testimony concerning scientific, technical, or other specialized knowledge offered in support of a party's claim is "not only relevant, but reliable." 509 U.S. at 589; *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting same). The proponent of the testimony must establish its admissibility, although it need not

4

prove its expert's theory is correct. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001); *Maryland Cas. Co. v. Therm–O–Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998).

The Fourth Circuit has explained the *Daubert* standard as a "two-step gatekeeping function" required of trial courts. First, the trial court must ask whether proffered scientific evidence is valid and reliable. *United States v. Barnette*, 211 F.3d 803, 815 (4th Cir. 2000). Second, the court asks whether the evidence will help the trier of fact, which is generally a question of relevance, or "fit." The court must ask if, assuming the evidence is reliable, it will "assist the trier of fact to understand or determine a fact in issue." *Maryland Cas. Co.*, 137 F.3d at 783 (quoting *Daubert*, 509 U.S. at 592). The court's role in limiting expert testimony is important: "due to the difficulty of evaluating their testimony, expert witnesses have the potential to be both powerful and quite misleading." *Cooper*, 259 F.3d at 199 (citations omitted). Indeed, "given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). As discussed below, the court concludes that Steffens's opinions have "a greater potential to mislead than to enlighten," *see id.*, and they should be excluded.

**B. Steffens's Bias**

Defendants first argue that Steffens's testimony cannot be considered reliable because he has a direct financial stake in the outcome of the litigation. They note his admissions that he will receive forty-five percent of any recovery by Keystone in this litigation and assert that this constitutes a "contingency agreement," at least in terms of its effect, and certainly gives him a direct financial stake in the outcome of the litigation.

Although neither party addresses the issue, it appears to this court that such exclusion of a proffered expert with such a direct financial stake in the litigation could be accomplished under Rule 702 and the standards set forth above, as such testimony could be deemed inherently unreliable. Alternatively, the exclusion could be premised on a court's inherent authority to exclude testimony as against public policy. *See Perfect 10 v. Giganews, Inc.*, No. CV 11-07098-AB, 2014 WL 10894452, at *5 (C.D. Cal. Oct. 31, 2014) (making that distinction); *cf. Rhodes v. E.I. Du Pont De Nemours & Co.*, 558 F. Supp. 2d 660, 664–67 (S.D.W. Va. 2008) (noting generally the court's inherent power to disqualify experts and discussing that power in the context of disqualification for an expert's "switching sides" in a case). Regardless of the basis, the court concludes that Steffens should not be permitted to testify as an expert because of the clear bias he has as a result of his direct financial incentives in the outcome of this case. While his testimony as a fact witness is obviously appropriate despite that bias, allowing him to offer "expert" opinions under these circumstances would be confusing and potentially misleading to the jury.

The Fourth Circuit briefly addressed issues concerning bias of expert witnesses in *Accrued Financial Services, Inc. v. Prime Retail, Inc.*, 298 F.3d 291 (4th Cir. 2002), on which defendants rely. There, the primary issue on appeal was whether assignments of litigation interests to the plaintiff violated public policy. The plaintiff sought the assignments to further its "business of uncovering claims and earning fees from collecting on them," and the assignments involved not just existing claims, but "any and all causes of action," present and future. *Id.* at 297. The court concluded that the assignments were effectively lawsuit-mining and that they violated Maryland's public policy prohibiting "schemes to promote litigation for the benefit of the promoter rather than for the benefit of the litigant or the public." 298 F.2d at 298, 299

(citation omitted). At the end of its opinion, the court briefly noted that the arrangements also were against public policy insofar as they contemplated that plaintiff's employees would testify as expert witnesses for a contingent fee. *Id.* at 300. It relied on the reasons set forth by the district court, *id.*, which included not only that such agreements violated Maryland's rules of professional conduct, but also that "[f]inancial arrangements that provide incentives for the falsification or exaggeration of testimony threaten the very integrity of the judicial process which depends upon the truthfulness of the witnesses." *Accrued Fin. Servs., Inc. v. Prime Retail, Inc.*, No. CIV JFM-99-2573, 2000 WL 976800, at *3 (D. Md. June 19, 2000), *aff'd*, 298 F.3d 291 (4th Cir. 2002).

At least one other circuit has a different approach to the issue than that expressed in *Accrued Financial*. Specifically, the Seventh Circuit has allowed a party to testify as his own expert witness, even though "there is a rule against employing expert witnesses on a contingent-fee basis," because that is a rule of professional responsibility and it should not result in the exclusion of the witness altogether. *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1042 (7th Cir. 1988) (rule against contingent fee expert witnesses is a rule of professional conduct rather than of admissibility of evidence). Instead, the Seventh Circuit's approach posits that such conflicts go to the credibility a witness should be given by the factfinder. *Cf. United States v. Valona*, 834 F.2d 1334, 1343 (7th Cir. 1987) (rejecting per se exclusion of contingent fee informant (as a fact witness) and saying that the better approach is to allow the factfinder to consider a fee arrangement as a credibility factor).[2]

---

[2] *Tagatz* has been referred to as a "notable exception" to the "unanimity" of courts who exclude expert witnesses with contingency fee agreements. *Perfect 10 v. Giganews, Inc.*, No. CV 11-07098-AB, 2014 WL 10894452, at *5 (C.D. Cal. Oct. 31, 2014). In *Perfect 10*, the court also noted that the *Tagatz* court's analysis focused entirely on Rule 702 and did not address a court's inherent authority to exclude expert opinion testimony as against public policy.

Additionally, in two decisions from district courts within the Fourth Circuit, the courts acknowledged *Accrued Financial*, but ultimately did not exclude expert testimony based on it. In the first, the court addressed the issue when ruling on a Rule 12(b)(6) motion. *Malibu Media, LLC v. Doe*, No. 14-CV-00223-MJG, 2014 WL 4682793, at *3–4 (D. Md. Sept. 18, 2014) (Report & Recommendation), *adopted by* 2015 WL 857408 (D. Md. Feb. 26, 2015). In doing so, it noted that "[i]t is likely that an expert paid a contingent fee could not serve as a witness in a case in this district" and also noted that the fee agreement itself "may well be . . . unenforceable as contrary to public policy." Ultimately, though, the court explained that these issues "have little relevance" at the pleading stage. So, its statements on the topic are arguably dicta.[3]

In the second case, the court found that *Accrued Financial* was "completely distinguishable" on its facts. *Signal Perfection, Ltd. v. McPhee Elec., Ltd.*, No. CIV.A. WGC-10-2331, 2015 WL 5136565, at *6 (D. Md. Aug. 31, 2015). It allowed an individual with an indirect financial stake in the litigation to offer expert opinions. Defendants argue that this case is more like *Signal Perfection* than *Accrued Financial*, and they urge this court to follow the former.

There is an important distinction, however, between *Signal Perfection* and this case. The challenged witness in *Signal Perfection* was a "hybrid fact/expert witness" (and thus no expert report was required of him), and here, Steffens has been offered as both a fact witness and an expert witness. *Id.* While the witness there, like Steffens, had a financial interest in the case, the similarities largely end there. In *Signal Perfection*, the individual testifying was the owner of a ten percent interest of the parent company of the party for which he was testifying. Thus, his

---

[3] *Malibu Media, LLC* was also factually distinguishable on at least three grounds: (1) the witness there was a salaried employee of the company receiving the fee, and thus any benefit to him was indirect; (2) the party who had hired the expert said it would call a different witness at trial and there was no reason given why it could not have a contingent fee contract with a non-testifying expert; and (3) the hiring party had changed its fee agreement to a fixed fee agreement prior to the issuance of the opinion.

8

financial interest in the litigation was indirect and not substantial.  *Id.*  Here, by contrast, Keystone is not an ongoing business concern, and Steffens, according to his own testimony, stands to gain nearly *half* of any recovery made in this lawsuit.  Steffens also testified that Keystone's failure cost him at least his $600,000 personal investment, plus several years of lost salary that he alleges would have totaled roughly $1 million.  (Steffens Jan. Dep. 60.)

Additionally, Steffens is unlike the expert permitted to testify in *Signal Perfection* in other important respects.  The expert there was the defendant's chief financial officer and a certified public accountant.  He had 20 years' experience in construction project financing, and he had testified before courts—albeit not as an "expert"—and federal regulatory agencies on issues directly related to his claimed expertise.  2015 WL 5136565, at *5, *7.  Steffens, by contrast, relies solely on his expertise, does not have any professional designations, and has never testified as an expert in any other capacity.  It is also worth noting that, procedurally, *Signal Perfection* was decided on a motion for reconsideration of a judgment and could be granted on that issue only "to correct a clear error of law or prevent manifest injustice."  *Id.* at *2.  It was also after a bench trial, so there had been no risk of jury confusion or the jury being misled.  All of these factors distinguish this case from *Signal Perfection*.

In addition to the critical fact that *Accrued Financial* continues to be the law of this circuit and binding on this court, it is also worth noting that *Accrued Financial* has been cited favorably in out-of-circuit cases, including *Perfect 10*, No. CV 11-07098-AB, 2014 WL 10894452.  In that case, the court excluded altogether a proposed expert witness who had a direct financial stake in the outcome of the litigation.  *Id.* at *6.

Keystone argues that *Accrued Financial* is factually distinguishable because the arrangement here is not a "contingent fee" and so is not governed by *Accrued Financial*.  But the

9

language in the *Accrued Financial* decision was not so limited, and, in any event, other courts have interpreted it more broadly. *E.g.*, *Perfect 10,* 2014 WL 10894452, at *4 (recognizing that a direct financial interest can arise due to the witness's status as a party, by contingency fee agreement, or otherwise).

Keystone also cites to cases (mostly out-of-circuit authority) for the proposition that the credibility of an expert is to be determined by a jury and is not grounds for exclusion. That is generally true. And the court recognizes that there are courts who have have allowed employees of a party to testify as experts, despite some financial interest in the outcome of the case. (*See* Pl.'s Opp'n Mot. to Exclude 11–12, Dkt. No. 100 (citing authority).)

But the entirety of the circumstances here are different than the typical case. First of all, unlike many of the cases cited by defendants or the principles those cases reference, Steffens has a direct financial stake in the litigation itself, not just an ownership interest in the party for whom he is testifying. He is a party to a separate economic agreement in which he negotiated with others and agreed to split up the proceeds from this litigation. Additionally, as noted above in the court's discussion of *Signal Perfection*, he has never before testified as an expert, but is testifying based on experience alone (as opposed to education or qualifications), and his opinions are primarily subjective.

In sum, the particular circumstances of this case—which include Steffens's clear, substantial, and direct financial stake in this litigation and the fact that his testimony is largely subjective, as opposed to being based on reproducible scientific or other technical methods— lead the court to conclude that Steffens should be excluded as an expert.

Even if the court did not exclude him on that ground, however, the court also finds that he is not qualified as an expert to offer the opinions in his report, and that the opinions

themselves are generally unsupported, unreliable, or unhelpful to the jury, as discussed in Section D *infra*.

**C. Steffens's Qualifications**

The parties strongly disagree about Steffens's qualifications to offer his opinions. For its part, defendants define his area of expertise as "forest products logistics." Keystone appears to concede that Steffens does not have sufficient experience to qualify as an expert in "forest products logistics." Keystone emphasizes, however, that he is being offered as an expert in the more general field of transportation logistics, including "the value of trade secrets" within that industry, "what information constitutes a trade secret" within that industry, and "how trade secrets are kept confidential" within that industry. (Pl.'s Mem. Opp'n Mot. Exclude 1–2.) Keystone points out that he has decades of experience in the more general field of transportation logistics. *Id.* It specifically discusses each of his business ventures and how they relate to the field. (*Id.* at 2–6.)

In reviewing a proffered expert's qualifications, one of the factors the court must look to is "fit." Especially where the basis for qualification is experience, a proposed expert's experience must be a "sufficient basis for the opinion" and his experience must be "reliably applied to the facts." *See Radiance Found., Inc.*, 27 F. Supp. 3d at 674.

To a degree, the court tends to agree with *both* parties as to Steffens's expertise. Specifically, he is not an expert in "forest products logistics," because he has too little experience in that specific and narrow field, and he probably could qualify as an expert in "transportation logistics" in an appropriate case. But that conclusion does not answer the question of whether Steffens has sufficient expertise to offer the opinions he proffers in this case. In the court's view, many of Steffens's opinions do not fall into either of those fields. Opinions 1, 2, 3, and 4, for

example, relate to the issue of trade secrets: what constitutes a trade secret, the value of trade secrets, and how they are kept confidential. Nothing in his background or experience reflects that he has any particular expertise with the subject of trade secrets, either within or outside the "transportation logistics" industry. Some of those opinions, moreover, are topics that he could testify about as a fact witness. For example, if he knows what non-disclosure agreements generally are used for and how and why they were used in this case, he can likely testify about that as a fact witness. Similarly, he may testify as a fact witness about the steps that Keystone took to safeguard the information it is alleging constitutes trade secrets. But the court does not see in his background any particular expertise as to those subjects.

### D. Steffens's Opinions

More importantly, as to the opinions themselves, the court agrees with defendants that many are unreliable because they are based upon subjective belief. *See Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (explaining that an expert opinion must be based on "scientific, technical, or other specialized *knowledge* and not on belief or speculation, and [its] inferences must be derived using scientific or other valid methods"). They are not based on any reasoned methodology. Instead, the court finds that many of his opinions—even if he were qualified to give them—are merely Keystone's narrative of the events at issue offered in the guise of expert testimony. In particular, opinions 1, 5, and 6 suffer from this flaw. Such opinions are not helpful to the jury and are excludable on that basis. *Sanchez v. Boston Sci. Corp.*, No. 2:12-cv-05762, 2014 WL 4851989, at *31 (S.D.W. Va. Sept. 29, 2014) (excluding expert testimony because "much" of the expert report was "a narrative review of corporate documents" and included opinions "riddled with improper testimony regarding [a party's] state of mind and legal conclusions"); *FedEx Ground Pkg. Sys., Inc. v. Applications Int'l Corp.*, 695

F. Supp. 2d 216, 221–22 (W.D. Pa. 2010) (excluding expert testimony where "report does nothing more than recite general legal principles and apply them to [one party's] version of the facts in the case"); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 538 (S.D.N.Y. 2004) (explaining that an expert should be excluded where his role was "more to argue the client's cause from the witness stand than to bring to the fact-finder specialized knowledge or expertise that would be helpful in resolving the issues of fact presented by the lawsuit").

Even in Keystone's opposition, it admits that much of what Steffens relies on is other evidence in the case. (Pl.'s Opp'n Mot. Exclude 16–17 (refuting defendants' assertion that Steffens's "version of events" is inaccurate by noting that "Steffens relie[s] (as stated in his report and at deposition) on the actual documents and emails produced by the parties.").) Much of that information (if not all of it) will be provided directly to the jury through Steffens's testimony as a fact witness, the testimony of other witnesses, and documents. In short, the court does not believe it would be at all helpful to the jury to hear that same evidence again, this time filtered through the lens of an "expert" witness, which makes it more powerful, *Cooper*, 259 F.3d at 199. Put differently, an expert's opinion is helpful (and therefore relevant) "only to the extent the expert draws on some special skill, knowledge or experience to formulate that opinion; the opinion must be an expert opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert." *Ancho v. Pentek Corp.*, 157 F.3d 512, 518 (7th Cir. 1998) (internal quotations omitted). In this case, Steffens's report does not adequately tie his expertise (via his experience) to his opinions, and so the court concludes that many of his opinions are simply opinions "broached by a purported expert." *See id.* As such, they are inadmissible.

On a final note, some of his opinions are impermissible legal conclusions. As to those,

> [e]xpert opinions that merely recite "a legal standard and draw[ ] a legal conclusion by applying law to the facts is generally inadmissible." *United States v. McIver*, 470 F.3d 550, 561–62 (4th Cir. 2006) (citing *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002)). An expert's testimony is deemed a legal conclusion where "the terms used by the witness have a separate, distinct and specialized meaning in the law different from that in the vernacular." *Id.* at 562. The district court's task "is to distinguish [helpful] opinion testimony that embraces an ultimate issue of fact from [unhelpful] opinion testimony that states a legal conclusion." *Barile*, 286 F.3d at 760.

*JFJ Toys, Inc. v. Sears Holdings Corp.*, 237 F. Supp. 3d 311, 324 (D. Md. 2017).

As the Fourth Circuit has squarely held, "[t]he existence of a trade secret is a conclusion of law based upon the applicable facts." *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 661 (4th Cir. 1993) (applying Maryland trade secrets act); *see also Steves & Sons, Inc. v. JELD-WEN, Inc.*, No. 3:16-CV-545, 2018 WL 1796293, at *10 (E.D. Va. Apr. 16, 2018) (quoting and applying *Trandes* in the context of the federal Defense of Trade Secret Act). As such, courts often exclude an expert's opinion that certain information constitutes a trade secret. *E.g.*, *Joe N. Pratt Ins. v. Doane*, Civil Action No. V-07-07, 2009 WL 5220646, at *5 (S.D. Tex. Dec. 30, 2009) (excluding expert's statements that attempted to use legal terminology, such as "misappropriate" and "proprietary information" and stating that "expert legal conclusions about whether information consists of 'trade secrets' are unhelpful to the fact finder"); *Patriarch, Inc. v. Dynomite Distribution, Inc.*, No. CV 06-4960 CAS, 2007 WL 4800400, at *3 (C.D. Cal. Feb. 14, 2007) (excluding opinions from expert witnesses as to whether certain customer and supplier lists were trade secrets). Thus, to the extent Steffens opines that Keystone's information constitutes a trade secret under the law, those opinions are excludable.

14

## III. CONCLUSION

For the foregoing reasons, the court will grant the motion to exclude Steffens as an expert. The court notes, though, that Steffens will be permitted to offer at least some of the same testimony as a fact witness.

Entered: April 19, 2019.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge